# United States Court of Appeals for the Federal Circuit

---

**VETERANS LEGAL ADVOCACY GROUP,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2024-1759

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-8291, Judge Scott Laurer.

---

Decided: June 1, 2026

---

THOMAS E.F. STRONG, Veterans Legal Advocacy Group, Arlington, VA, argued for claimant-appellant. Also represented by JENNIFER TRACY SHANNON HEALY, HAROLD HAMILTON HOFFMAN, III, MEGAN EILEEN HOFFMAN.

DANIEL FALKNOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE; RICHARD STEPHEN HUBER, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

—————————

Before LOURIE, PROST, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

The Equal Access to Justice Act (EAJA) authorizes an award of attorney fees to a party who "prevail[s]" in a suit against the United States. 28 U.S.C. § 2412(d)(1)(A). Veterans Legal Advocacy Group (VetLAG) appeals from a decision of the United States Court of Appeals for Veterans Claims (the Veterans Court) denying its EAJA application for attorney fees. *Veterans Legal Advoc. Grp. v. McDonough*, No. 20-8291(E), 2024 WL 1344276 (Vet. App. Mar. 29, 2024) (*Decision*). Because we agree with the Veterans Court that VetLAG was not a prevailing party, we *affirm*.

## BACKGROUND

In December 2020, VetLAG petitioned for a writ of mandamus to compel the United States Department of Veterans Affairs (VA) to correct VetLAG's mailing addresses. VetLAG contended that VA repeatedly sent correspondence to incorrect addresses despite VetLAG's efforts to notify VA of its change in mailing addresses. Accordingly, VetLAG requested the Veterans Court to compel VA to (1) update the firm's "address in every system," (2) "only send correspondence to the correct address," and (3) "pay VetLAG $1,000" every time VA sends correspondence to the wrong address. J.A. 23.

During oral argument before the Veterans Court, the Secretary's counsel argued that the petition was moot because VA had corrected the addresses for all VetLAG attorneys identified in the petition and that VA would publish a policy on its website that provides guidance to attorneys going forward on how to alert VA of a change of address. J.A. 581. Counsel also offered to submit an affidavit from a VA official confirming those corrections. *Id.*

In a November 5, 2021 Order (November 2021 Order), the Veterans Court accepted VA's offer to provide an affidavit because it would help the court "determine whether the issue raised in the petition is moot." *Id.* at 582. The order required VA to explain, among other things, (i) whether VetLAG's correct address appeared in the VA central database, and (ii) the policy VA purportedly developed for attorneys to update their addresses. *Id.*

On January 11, 2022, VA provided signed affidavits, along with an updated "Fact Sheet," which explained the process for updating a mailing address with VA. J.A. 588–91, 593–94, 596–606. Accordingly, the Veterans Court dismissed VetLAG's petition for a writ of mandamus as moot on February 14, 2022. J.A. 612. VetLAG then filed an EAJA application seeking attorney fees. J.A. 664.

The Veterans Court denied the application. It relied on *Cavaciuti v. McDonough*, where we affirmed the Veterans Court's denial of a request for fees under EAJA. *Decision*, 2024 WL 1344276, at \*1 (citing 75 F.4th 1363, 1368 (Fed. Cir. 2023)). In *Cavaciuti*, we held that, absent a "judicial imprimatur," a benefit conferred by VA—even if prompted by litigation—does not confer prevailing-party status required for entitlement to fees under EAJA. 75 F.4th at 1367. Applying this precedent, the Veterans Court held that VetLAG failed to prove that it was a prevailing party because "[t]here was no court-mandated decision or order that evaluated the merits of the petition." *Decision*, 2024 WL 1344276, at \*2.

VetLAG then filed the present notice of appeal to this court. We have jurisdiction under 38 U.S.C. § 7292.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited. *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). We may review legal questions, including the interpretation of any statutes or regulations relied

upon by the Veterans Court. 38 U.S.C. § 7292(a). But, except for constitutional issues, we may not review the Veterans Court's factual findings or its application of law to facts. *Id.* § 7292(d)(2).

Although we review the Veterans Court's interpretation of EAJA de novo, we lack jurisdiction to review the court's underlying factual determinations. *Cavaciuti*, 75 F.4th at 1366 (citation omitted). An EAJA applicant bears the burden of establishing prevailing-party status. *Id.* (quotation and citation omitted).

As an initial matter, the government argues that we lack jurisdiction because VetLAG's appeal merely disputes the Veterans Court's factual findings. But VetLAG raises a legal question: whether a court order requiring a party to confirm its voluntary corrective actions for purposes of assessing mootness constitutes sufficient "judicial imprimatur" to confer prevailing-party status. We therefore have jurisdiction to review that issue.[1]

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, the Supreme Court distinguished prevailing parties from parties not entitled to attorney fees. 532 U.S. 598, 605–06 (2001). A party prevails where there is a "material alteration of the legal relationship of the parties," such as through a judgment on the merits or a court-ordered consent decree. *Id.* at 604 (citation omitted). By contrast, a defendant's voluntary change in conduct, even if prompted by litigation (i.e., the catalyst theory), "lacks the necessary judicial

---

[1]    For example, we previously explained that whether a remand confers prevailing-party status under EAJA is a legal question that falls within our jurisdiction. *See Robinson v. O'Rourke*, 891 F.3d 976, 979 (Fed. Cir. 2018) (citing *Thompson v. Shinseki*, 682 F.3d 1377, 1382 (Fed. Cir. 2012)).

*imprimatur* on the change" and does not confer prevailing-party status. *Id.* at 605. We applied that rule to the EAJA context in *Cavaciuti*. *See* 75 F.4th at 1367–68.

In *Cavaciuti*, we affirmed the Veterans Court's denial of the petitioner's application for EAJA fees after the court dismissed his mandamus petition. *Id.* at 1368. The Veterans Court dismissed the petition as moot because VA voluntarily granted his requested relief. *Id.* at 1367. In dismissing the petition, the Veterans Court neither evaluated the merits nor materially altered the parties' legal relationship. *Id.* Similarly, here, VA voluntarily corrected VetLAG's mailing addresses and implemented a policy for attorneys to update their addresses going forward. As in *Cavaciuti*, the Veterans Court's dismissal of VetLAG's petition did not materially alter the parties' legal relationship. Accordingly, the Veterans Court did not err in relying on *Cavaciuti* to deny VetLAG's EAJA application. *See Decision*, 2024 WL 1344276, at *1–2.

VetLAG argues that this case differs from *Cavaciuti* because the November 2021 Order materially altered the legal relationship of the parties and therefore rendered it a prevailing party. We disagree.

The November 2021 Order did not materially alter the legal relationship between the parties. The order required VA only to submit affidavits confirming actions VA represented it had already voluntarily taken. *See* J.A. 581–82. The court's order further explained that the affidavits would "help it determine whether the issue raised in the petition is moot." *Id.* at 582. Thus, the order served to evaluate mootness, not to compel corrective action or otherwise address the merits of VetLAG's petition.

VetLAG relies on *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025), to argue that the November 2021 Order bore sufficient judicial *imprimatur* because it required sworn affidavits and therefore could be enforced through contempt

proceedings, like a consent decree.[2]  *See* Appellant Reply Br. 7.  But *Lackey* explained that a consent decree "is like a final judgment" for purposes of prevailing-party status because it "conclusively resolves the claim" and "may grant enduring relief that materially alters the legal relationship between the parties."  604 U.S. at 207.  The November 2021 Order did neither; it required affidavits solely to assist the court in determining whether the case had become moot. Because the order served only that limited information-gathering purpose, it lacked the judicial *imprimatur* characteristic of a consent decree.

We therefore hold that a court order requiring a party only to confirm its voluntarily taken corrective actions for purposes of assessing mootness does not bear sufficient judicial *imprimatur* to confer prevailing-party status.

## CONCLUSION

We have considered VetLAG's remaining arguments, and find them unpersuasive.  For the foregoing reasons, we affirm the Veterans Court's decision denying VetLAG's application for attorney fees and expenses under EAJA.

## AFFIRMED

### COSTS

No costs.

---

[2]    As relevant to the prevailing-party issue, any misrepresentations in the affidavits, at most, could have led the Veterans Court to vacate its mootness dismissal.